**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order

United States Courts
Southern District of Texas
FILED

January 26, 2023

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | § |
| | § |
| **v.** | § |
| | § |
| **DWAIN ROSS,** | § |
| **DELORES MACKEY-ROSS,** | § |
| **ANN NGUYEN, Pharm. D.,** | § |
| **DAVID ROSS,** | § |
| **KEVIN PETERSON, and** | § |
| **ELEANOR MARSH,** | § |
| | § |
| | § |
| **Defendants.** | § |

Criminal No. _____   **4:23-CR-041**

**UNDER SEAL**

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

1.     The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2.      The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.     A controlled substance assigned to "Schedule II" meant that the drug had a high

potential for abuse and a currently accepted medical use in treatment in the United States, or the

drug had a currently accepted medical use with severe restrictions.

4.     Pursuant to the CSA and its implementing regulations:

a.     Oxycodone was classified as a Schedule II controlled substance. Oxycodone was used to treat severe pain and, as with other opioids, was highly addictive. Oxycodone HCL 30mg ("oxycodone 30mg") tablets were sometimes marketed under the brand name Roxicodone, yielding the street name "Roxy," or "Roxies." The 30mg pill was the highest, short-acting pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

b.     Hydrocodone was classified as a Schedule II controlled substance. Hydrocodone was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive. Tablets combining 10mg of hydrocodone bitartrate and 325mg of acetaminophen ("hydrocodone 10-325mg") was sometimes marketed under the brand name Norco. The 10-325mg pill was the highest, short-acting combination-pill form of the drug commercially available, and it had substantial street value and was in high demand on Houston's black market.

c.     "Potentiators," so-called because they enhanced the high from opioids like hydrocodone, oxycodone, and hydromorphone, included carisoprodol, a Schedule IV controlled substance classified as a muscle relaxant; alprazolam, a Schedule IV controlled substance used to treat anxiety; and promethazine with codeine, a Schedule V controlled substance classified as a cough suppressant. All had substantial street value and were in high demand on Houston's black market.

5.     With exceptions not applicable here, only appropriately licensed and registered

pharmacies could dispense controlled substances, and only pursuant to legitimate prescriptions

filled by an appropriately licensed and registered pharmacist acting in the usual course of his

professional practice. *See* 21 C.F.R. §§ 1306.04 and 1306.06. The issuing physician and the

pharmacist who filled the prescription for a controlled substance shared a corresponding

2

responsibility for its proper prescribing and dispensing. *See* 21 C.F.R. § 1306.04. In addition, Section 1306.04 instructs that

> [a]n order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of Section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

6.     Rule § 291.29 of the Texas Administrative Code required that a "pharmacist shall make every reasonable effort to prevent inappropriate dispensing due to fraudulent, forged, invalid, or medically inappropriate prescriptions in violation of a pharmacist's corresponding responsibility."

## DEFENDANTS, RELEVANT INDIVIDUALS, AND ENTITIES

7.     Defendants **DWAIN ROSS** and **DELORES MACKEY-ROSS** owned and operated pharmacies, including TX United Pharmacy, located at 802 Texas Parkway, Suite 2A, Stafford, Texas ("TX UNITED") and Power Center Pharmacy #2, located at 2419 Texas Parkway, Suite 100, Missouri City, Texas ("POWER CENTER").

8.     Defendant **ANN NGUYEN** was a pharmacist licensed with the Texas State Board of Pharmacy ("TSBP"), License No. 62219. **ANN NGUYEN** was, at different, partially overlapping times, the Pharmacist-in-Charge ("PIC") at TX UNITED and POWER CENTER. She was replaced at POWER CENTER by Pharmacist A.

9.     Defendants **DAVID ROSS**, **KEVIN PETERSON**, and **ELEANOR MARSH** were individuals who illegally obtained controlled substances, in bulk, to sell onto the black market, in the Houston area and elsewhere. At times, **DAVID ROSS**, **KEVIN PETERSON**, and

3

**ELEANOR MARSH**, assisting or assisted by **DWAIN ROSS** and **DELORES MACKEY-ROSS**, owned, operated, and assisted with other tasks, including setting up, managing, and securing vendors for pharmacies for the purpose of acquiring controlled substances to sell onto the black market.

10.     In and around 2022, **DAVID ROSS** owned DR Pharmacy, at 11105 W. Airport Blvd., Ste. 137, Stafford, Texas ("DR PHARMACY"); in and around 2020 and 2021, **ELEANOR MARSH** operated Nu Care Pharmacy, 8880 Bellaire Blvd., Suite B2, Houston, Texas ("NU CARE"). At different times between 2019 and 2021, **KEVIN PETERSON** helped acquire, set up, and secure vendors for various pharmacies, on behalf of, aided and abetted by, and aiding and abetting the **DWAIN ROSS, DELORES MACKEY-ROSS**, and others.

11.     Collectively, **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH,** and their drug trafficking co-conspirators known and unknown to the Grand Jury, are the "ROSS Drug Trafficking Organization" or "ROSS DTO."

12.     Wholesalers, like Wholesaler B, often through independent sales representatives, like Broker B, sold TX UNITED and POWER CENTER large quantities of oxycodone, hydrocodone, and the Potentiators alprazolam, carisoprodol, and promethazine with codeine, which were illegally dispensed and sold onto the black market.

13.     Traffickers A and B were drug traffickers that illegally bought bulk quantities of alprazolam, carisoprodol, promethazine with codeine, and other controlled substances from the ROSS DTO.

14.     Co-conspirators A and B helped **DWAIN ROSS** launder his ill-gotten gains, including through the purchase and sale of real estate.

## COUNT ONE
**Conspiracy to Unlawfully Distribute and Dispense Controlled Substances**
**(21 U.S.C. § 846)**

15.     Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

16.     From in or around December 1, 2020, and continuing through in or around December 1, 2022, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**DWAIN ROSS,**
**DELORES MACKEY-ROSS, and**
**ANN NGUYEN, Pharm. D.,**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), that is, to knowingly and intentionally distribute and dispense, and to possess with the intent to distribute and dispense, mixtures and substances containing a detectable amount of controlled substances, including hydrocodone and oxycodone, each a Schedule II controlled substance, not with a legitimate medical purpose and outside the scope of professional practice.

## Purpose of the Conspiracy

17.     It was the purpose of the conspiracy for **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, other members of the ROSS DTO, and others known and unknown by

5

the Grand Jury, to unlawfully enrich themselves by, among other things: (a) trafficking in controlled substances, including hydrocodone and oxycodone, that **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, and other members of the ROSS DTO distributed and dispensed, possessed with the intent to distribute and dispense, and caused to be distributed and dispensed and possessed with the intent to distribute and dispense, without a legitimate medical purpose and outside the scope of professional practice; (b) generating large profits from trafficking in controlled substances; and (c) diverting the proceeds from those controlled substance sales for the personal use and benefit of **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, and other members of the ROSS DTO.

**Manner and Means of the Conspiracy**

The manner and means by which **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, other members of the ROSS DTO, and others known and unknown to the Grand Jury sought to accomplish the purpose and object of the conspiracy included, among other things:

18.    **DWAIN ROSS** and **DELORES MACKEY-ROSS** maintained Texas Pharmacy Licenses from the TSBP and registrations with U.S. Drug Enforcement Administration ("DEA Registrations") for TX UNITED and POWER CENTER, and they employed a licensed pharmacist, **ANN NGUYEN**, as the PIC to give the pharmacies a veneer of legitimacy.

19.    **DWAIN ROSS** and **DELORES MACKEY-ROSS** performed certain day-to-day operations for TX UNITED and POWER CENTER, including:

    a. Placing orders on behalf of TX UNITED and POWER CENTER and other pharmacies controlled by the ROSS DTO, with wholesalers and their

representatives, including Broker B as a representative of Wholesaler B, for controlled substances like hydrocodone and oxycodone;

b. receiving for TX UNITED and POWER CENTER, and causing to be received for TX UNITED and POWER CENTER, illegitimate prescriptions for controlled substances, which were often sent to the pharmacies electronically ("e-scribed") under the names and identifiers of doctors employed by, and whose identities were being used by, ROSS DTO members and their affiliates; and

c. depositing cash proceeds from the illegal sales of these controlled substances into accounts controlled by **DWAIN ROSS** and **DELORES MACKEY-ROSS**.

20.     **ANN NGUYEN** filled prescriptions for controlled substances, and then distributed and dispensed them, mostly in batches provided directly to drug traffickers posing as drivers for purported clinics and clinicians. **DWAIN ROSS, DELORES MACKEY-ROSS,** and **ANN NGUYEN** knew the purported prescriptions were issued by the purported clinics and clinicians outside the scope of professional practice, and without any legitimate medical purpose.

21.     Even after **DWAIN ROSS, DELORES MACKEY-ROSS,** and **ANN NGUYEN** were specifically made aware by the TSBP of numerous reasons that **ANN NGUYEN's** dispensing at TX UNITED was outside the scope of professional practice and violated **ANN NGUYEN's** corresponding responsibility as a pharmacist to ensure the prescriptions she and TX UNITED filled had a legitimate medical purpose, **DWAIN ROSS, DELORES MACKEY-ROSS,** and **ANN NGUYEN** continued to conspire to distribute and dispense, and cause to be distributed and dispensed—from TX UNITED, POWER CENTER, and other pharmacies the ROSS DTO

controlled—hydrocodone and oxycodone, in substantially the same manner they knew was nontherapeutic, outside the scope of professional practice, and without any legitimate medical purpose.

22.    **DWAIN ROSS**, **DELORES MACKEY-ROSS**, and other members of the ROSS DTO maintained the physical premises at TX UNITED, POWER CENTER, and the other pharmacies the ROSS DTO controlled, not for the purpose of conducting legitimate pharmacy business, but as a front to illegally distribute and dispense controlled substances to drug traffickers, while avoiding detection by law enforcement.

23.    Through POWER CENTER and TX UNITED, **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, and other members of the ROSS DTO purchased and caused to be purchased at least approximately 450,000 pills combined, of hydrocodone 10-325mg and oxycodone 30mg, during the brief time they were operating. **ANN NGUYEN** reported to TSBP's prescription monitoring program ("PMP") that she personally distributed and dispensed more than half of these pills.

24.    **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, and other members of the ROSS DTO split the proceeds from the illegal cash sales of the hydrocodone, oxycodone, and other controlled substances acquired through TX UNITED, POWER CENTER, and other pharmacies controlled by the ROSS DTO.

25.    Often, **DWAIN ROSS, DELORES MACKEY-ROSS, ANN NGUYEN**, and other members of the ROSS DTO laundered and caused to be laundered cash proceeds from the sale of controlled substances, intending to avoid a transaction reporting requirement under federal

law and to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
**Conspiracy to Unlawfully Distribute and Dispense Controlled Substances**
**(21 U.S.C. § 846)**

26.     Paragraphs 1 through 14 and 18 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

27.     From in or around January 2019, and continuing through in or around December 2022, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**DWAIN ROSS,**
**DELORES MACKEY-ROSS,**
**DAVID ROSS,**
**KEVIN PETERSON, and**
**ELEANOR MARSH**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Sections 841(a)(1), (b)(2) and (b)(3), that is, to knowingly, intentionally, and unlawfully distribute, and possess with the intent to distribute, mixtures and substances containing a detectable amount of controlled substances, including alprazolam, carisoprodol, and promethazine with codeine, controlled substances in Schedules IV and V.

9

**Purpose of the Conspiracy**

28.     It was the purpose of the conspiracy for **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, other members of the ROSS DTO, and others known and unknown to the Grand Jury to unlawfully enrich themselves by, among other things: (a) trafficking in controlled substances, including alprazolam, carisoprodol, and promethazine with codeine that **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO distributed, possessed with the intent to distribute, and caused to be distributed and possessed with the intent to distribute; (b) generating large profits from trafficking in controlled substances; and (c) diverting the proceeds from those controlled substance sales for the personal use and benefit of **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO.

**Manner and Means of the Conspiracy**

The manner and means by which **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, other members of the ROSS DTO, and others known and unknown to the Grand Jury, sought to accomplish the purpose and object of the conspiracy included, among other things:

29.     **DWAIN ROSS** and **DELORES MACKEY-ROSS** maintained Texas Pharmacy Licenses and DEA Registrations for TX UNITED and POWER CENTER. **DWAIN ROSS** and **DELORES MACKEY-ROSS** employed licensed pharmacists, so that the ROSS DTO could hold TX UNITED and POWER CENTER out to TSBP and others as legitimate pharmacies.

30.     Other members of the ROSS DTO, aiding and abetting and aided and abetted by **DWAIN ROSS** and **DELORES MACKEY-ROSS**, owned, operated, and assisted with other tasks, including setting up, managing, and securing vendors and pharmacists for, other pharmacies in and around the Houston area, for the purpose of acquiring controlled substances to sell onto the black market. These included DR PHARMACY, owned by **DAVID ROSS**; and NU CARE, operated by **ELEANOR MARSH**.

31.     At any given time, **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO controlled and maintained high-level access to procure controlled substances at several pharmacies, ensuring that the ROSS DTO had a steady supply of alprazolam, carisoprodol, promethazine with codeine, and other controlled substances to divert and sell onto the black market.

32.     **DWAIN ROSS, DELORES MACKEY-ROSS**, and other members of the ROSS DTO ordered, and caused to be ordered, from wholesalers, like Wholesaler B, often through independent sales representatives, like Broker B, the Schedule IV-V controlled substances alprazolam, carisoprodol, and promethazine with codeine.

33.     In some instances, **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO made efforts to hide from pharmacists for the ROSS DTO the orders the ROSS DTO made for, and deliveries the ROSS DTO received of, alprazolam, carisoprodol, and promethazine with codeine. In other instances, members of the ROSS DTO falsely claimed that the controlled substances had been received by the pharmacy in error and would be sent back. The pharmacies and pharmacists, in turn, would not report dispensing these controlled substances to TSBP's PMP database.

11

34.    Sales representatives, like Broker B, helped the ROSS DTO maximize the controlled substances that the ROSS DTO pharmacies could order from wholesalers, like Wholesaler B, each month. One way that Broker B did so was to share with Defendant **DWAIN ROSS** ordering parameters that Wholesaler B required for each pharmacy to maximize its allocations of the controlled substances that the ROSS DTO would divert.

35.    For example, in July 2020, Broker B informed **DWAIN ROSS** that TX UNITED needed to purchase controlled substances in a non-controlled-to-controlled substance ratio of "80/20 [per] pill. 4K non controls for every 1k controls." In May 2021, **DWAIN ROSS** texted Broker B to "put a [sic] order in" for POWER CENTER. Broker B would alert **DWAIN ROSS** when the ROSS DTO pharmacies' controlled substances of choice were available. In July 2021, using street slang for promethazine with codeine, Broker B asked **DWAIN ROSS**, "Need some water for either place?" **DWAIN ROSS** responded, "Yes sir, power center," Broker B applied the "like" text button to that response.

36.    When the ROSS DTO pharmacies received Schedule IV and V controlled substances from wholesalers, like Wholesaler B, a member of the ROSS DTO would receive the controlled substances, often directly from the carrier driver outside the ROSS DTO pharmacy or at another prearranged location, and then transport the controlled substances, sometimes still in the box and manufacturer's bottle(s) from the wholesaler, to a ROSS DTO-controlled location, sometimes **DWAIN ROSS's** residence, for further unlawful distribution.

37.    **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO knew and intended that the Schedule IV and V controlled substances that TX UNITED, POWER CENTER, and other pharmacies that the ROSS DTO controlled directly and indirectly ordered from wholesalers, like

Wholesaler B, would be illegally distributed for cash, often in bulk, without the involvement of physicians, patients, or prescriptions, and without any legitimate medical purpose—to one another; other ROSS DTO members; and drug traffickers, like Trafficker A and Trafficker B. **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON,** and **ELEANOR MARSH** knew and intended that, ultimately, the controlled substances would be unlawfully sold onto the black market for cash.

38.     **DWAIN ROSS, DELORES MACKEY-ROSS**, and other members of the ROSS DTO often deposited cash proceeds from the illegal sales of these controlled substances into accounts controlled by **DWAIN ROSS, DELORES MACKEY-ROSS**, and other members of the ROSS DTO.

39.     **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO maintained the physical premises at TX UNITED, POWER CENTER, and the other pharmacies the ROSS DTO controlled, not for the purpose of conducting pharmacy business, but only as a front to illegally distribute and dispense controlled substances to drug traffickers, like Traffickers A and B, all while avoiding detection by law enforcement.

40.     **DWAIN ROSS, DELORES MACKEY-ROSS, DAVID ROSS, KEVIN PETERSON, ELEANOR MARSH**, and other members of the ROSS DTO, split the proceeds from the illegal cash sales of the controlled substances acquired through TX UNITED, POWER CENTER, and other pharmacies controlled by the ROSS DTO.

All in violation of Title 21, United States Code, Section 846.

## COUNT THREE
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h) – Money Laundering Concealment)

41.     Paragraphs 1 through 14, 18 through 25, and 29 through 40 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

42.     From in or around January 2018, and continuing through in or around October 2022, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

### DWAIN ROSS and
### DELORES MACKEY-ROSS

did knowingly combine, conspire, and agree with each other, Co-conspirator A, Co-conspirator B, and other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Unlawfully Distributing and Dispensing, and Possessing with the Intent to Distribute and Dispense, a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2) and (b)(3), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and to avoid a transaction reporting requirement under federal law, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

### Manner and Means of the Conspiracy

The manner and means by which **DWAIN ROSS, DELORES MACKEY-ROSS**, Co-conspirator A, Co-conspirator B, and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

43. **DWAIN ROSS** and **DELORES MACKEY-ROSS**, and their co-conspirators, controlled bank accounts at different financial institutions that were used to "layer" proceeds from their illegal distribution and dispensing of oxycodone, hydrocodone, and other controlled substances, by transferring the proceeds from the criminal activity from bank account to bank account in order to obscure the origin of the proceeds and evade law enforcement detection.

44. **DWAIN ROSS, DELORES MACKEY-ROSS**, and their co-conspirators made numerous cash deposits into accounts they and their co-conspirators controlled of proceeds from the criminal activity in increments of less than $10,000, "structuring" these deposits at different banks and branches, sometimes on the same day, to avoid the requirement that banks report currency transactions over $10,000.

45. **DWAIN ROSS, DELORES MACKEY-ROSS**, Co-conspirator A, Co-conspirator B, and their co-conspirators conducted transactions in real estate to "wash" cash that Co-conspirator A and Co-conspirator B made off the illegal distribution and dispensing of hydrocodone, oxycodone, and other controlled substances, including:

    a.  PROPERTY A ("The WHITE HOUSE"), conveyed by one of **DWAIN ROSS's** entities, as Grantor, to one of Co-conspirator A's entities, as Grantee, as reflected in a General Warranty Deed dated April 9, 2020, filed on June 25, 2020, and signed by Co-conspirator A and **DWAIN ROSS**, with Co-conspirator B serving as notary; and

b. PROPERTY B ("The SEABREEZE PROPERTY"), conveyed by one of **DWAIN ROSS's** entities, as Grantor, to one of Co-conspirator A's entities, as Grantee, as reflected in a General Warranty Deed dated November 20, 2020, notarized by Co-conspirator B on March 15, 2021, and filed on or about March 18, 2021. On or about March 16, 2022, a General Warranty Deed signed by Co-conspirator A reflects sale of the SEABREEZE PROPERTY by one of Co-conspirator A's entities, as Grantor, to an affiliate of **KEVIN PETERSON**, as Grantee. The Purchase Contract reflects that **DELORES MACKEY-ROSS** served as Co-conspirator A's real estate agent for the transaction.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS FOUR AND FIVE
**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**
**(18 U.S.C. § 1957 & 18 U.S.C. § 2)**

46. Paragraphs 1 through 14, 18 through 25, 29 through 40, and 43 through 45 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

47. On or about the dates set forth below, in the Houston Division of the Southern District of Texas, and elsewhere, the Defendants set forth below, aiding and abetting and aided and abetted by each other and others, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, Conspiracy to Distribute and Dispense Controlled Substances, in violation of Title 21, United States Code, Section 846, and Unlawfully Distributing and Dispensing, and Possessing with the Intent to Distribute and Dispense, a Controlled Substance,

in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(2), and (b)(3), as follows:

| Count | Defendant(s) | Bank Account | In or Around Date/Time | Approx. Amount | Description |
|---|---|---|---|---|---|
| **4** | DWAIN ROSS | NA | July 28, 2021 | $100,700 | Cash Payment for Lamborghini |
| **5** | DWAIN ROSS, DELORES MACKEY-ROSS | Chase ROSS-SCOTT X5522; PNC ROSS-SCOTT X3263; and PNC X3255 | February 22, 2022 | $20,000 | Check #1099 drawn on X5522 to open X3263 and X3255 |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853)

48.     The allegations contained in Counts 1 and 2 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

49.     Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841 and 846, Defendants

**DWAIN ROSS,**
**DELORES MACKEY-ROSS,**
**ANN NGUYEN, Pharm. D.,**
**DAVID ROSS,**
**KEVIN PETERSON, and**
**ELEANOR MARSH**

shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or

intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

a. PNC BANK, Account No. 4720463239 in the name of D. ROSS POWER PHARMACY LLC., DBA POWER CENTER PHARMACY, OPERATING ACCOUNT.

b. PNC BANK, Account No. 4720463247 in the name of D. ROSS POWER PHARMACY LLC., DBA POWER CENTER PHARMACY, MERCHANT ACCOUNT.

c. PNC BANK, Account No. 4720463255 in the name of ROSS-SCOTT PHARMACY LLC., DBA TX UNITED PHARMACY, OPERATING ACCOUNT.

d. PNC BANK, Account No. 4720463263 in the name of ROSS-SCOTT PHARMACY LLC., DBA TX UNITED PHARMACY, MERCHANT ACCOUNT.

e. JP MORGAN CHASE BANK, Account No. 612055522 in the name of ROSS-SCOTT PHARMACY, DBA TX UNITED PHARMACY.

f. PNC BANK, Account No. 4720281961 in the name of EXCLUSIVE CONSTRUCTION LLC.

g. JP MORGAN CHASE BANK, Account No. 663152178 in the name of EXCLUSIVE CONSTRUCTION LLC.

h. VERITEX COMMUNITY BANK, Account No. 5501384563 in the name of EXCLUSIVE CONSTRUCTION LLC.

i. PNC BANK, Account No. 4720281937 in the name of EXCLUSIVE DEVELOPMENT & MANAGEMENT LLC.

j. PNC BANK, Account No. 4720463298 in the name of EXCLUSIVE DEVELOPMENT & MANAGEMENT LLC.

VEHICLES

a. 2021 Lamborghini Urus, Vehicle Identification Number ZPBUA1ZL9MLA14834

50.     If any of the property described above, as a result of any act or omission of Defendants:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to a money judgment and forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(1))

51.    The allegations contained in Counts 3 through 5 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

52.    Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 and 1957, Defendants

**DWAIN ROSS, and**
**DELORES MACKEY-ROSS**

shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

BANK ACCOUNTS

    a.   PNC BANK, Account No. 4720463239 in the name of D. ROSS POWER PHARMACY LLC., DBA POWER CENTER PHARMACY, OPERATING ACCOUNT.

    b.   PNC BANK, Account No. 4720463247 in the name of D. ROSS POWER PHARMACY LLC., DBA POWER CENTER PHARMACY, MERCHANT ACCOUNT.

c.  PNC BANK, Account No. 4720463255 in the name of ROSS-SCOTT
PHARMACY LLC., DBA TX UNITED PHARMACY, OPERATING
ACCOUNT.

d.  PNC BANK, Account No. 4720463263 in the name of ROSS-SCOTT
PHARMACY LLC., DBA TX UNITED PHARMACY, MERCHANT
ACCOUNT.

e.  JP MORGAN CHASE BANK, Account No. 612055522 in the name of ROSS-
SCOTT PHARMACY, DBA TX UNITED PHARMACY.

f.  PNC BANK, Account No. 4720281961 in the name of EXCLUSIVE
CONSTRUCTION LLC.

g.  JP MORGAN CHASE BANK, Account No. 663152178 in the name of
EXCLUSIVE CONSTRUCTION LLC.

h.  VERITEX COMMUNITY BANK, Account No. 5501384563 in the name of
EXCLUSIVE CONSTRUCTION LLC.

i.  PNC BANK, Account No. 4720281937 in the name of EXCLUSIVE
DEVELOPMENT & MANAGEMENT LLC.

j.  PNC BANK, Account No. 4720463298 in the name of EXCLUSIVE
DEVELOPMENT & MANAGEMENT LLC

VEHICLES

a.  2021 Lamborghini Urus, Vehicle Identification Number ZPBUA1ZL9MLA14834

53.     If any of the property described above, as a result of any act or omission of

Defendants:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without
         difficulty,

the United States of America shall be entitled to a money judgment and forfeiture of substitute

property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).


A TRUE BILL

## Original Signature on File
FOREPERSON


ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Drew Pennebaker*
DREW PENNEBAKER
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE